UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DARYLE ANTHONY STEWART,

      Petitioner,                      CASE NO. 07-14081

v.                                  HON. AVERN COHN

RAYMOND BOOKER,

      Respondent.
_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND DISMISSING CASE

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Daryl Anthony Stewart, ("Petitioner"), is a state inmate who is currently confined at the Ryan Correctional Facility in Detroit, Michigan, where he is serving three concurrent prison terms of 25 to 50 years each for armed robbery, MCL 750.529, assault with intent to rob while armed, MCL 750.89, assault with intent to commit murder, MCL 750.83, and a consecutive two-year term of imprisonment for the felony-firearm conviction. Petitioner has filed a pro se petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Attorney General's Office, filed a response, arguing that Petitioner's claims lack merit. For the reasons which follow, the petition will be denied.

### II. Procedural History

Petitioner was convicted of the above offenses following a jury trial in the Wayne

County Circuit Court.

Petitioner filed an appeal of right to the Michigan Court of Appeals, raising the three claims that he raises in the instant petition. The Michigan Court of Appeals affirmed petitioner's conviction and sentence. People v. Stewart, No. 259358 (Mich. Ct. App. Sept. 26, 2006). Petitioner filed an application for leave to appeal in the Michigan Supreme Court in which he raised the same issues that he had raised in his appeal of right. The Michigan Supreme Court denied petitioner leave to appeal. People v. Stewart, 477 Mich. 1006 (2007).

Petitioner has now filed an application for writ of habeas corpus alleging the following:

> I. The Michigan Court of Appeals was unreasonable in its application of clearly established U.S. Supreme Court precedent when it determined that Mr. Stewart was not denied his protection against double jeopardy where he was convicted of both armed robbery and assault with the intent to rob while armed based upon a single transaction and a single victim.

> II. The Michigan Court of Appeals was unreasonable in its application of clearly established U.S. Supreme Court precedent when it determined that Mr. Stewart was not denied his rights to a fair trial and effective assistance of counsel where the prosecution shifted the burden of proof and put the prestige of her office behind her argument and trial counsel's failure to object.

> III. The Michigan Supreme Court was unreasonable in its application of clearly established U.S. Supreme Court precedent when it determined that Mr. Stewart was not denied his rights to the prohibition of cruel and unusual punishment where the sentence is disproportionate to the crime.

### III. Facts

The Michigan Court of Appeals accurately summarized the relevant facts regarding Petitioner's conviction, which are presumed correct on habeas review, see Long v. Stovall, 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006), as follows:

2

> [T]he victim testified that defendant approached him while holding a
> revolver, placed the revolver to the victim's head to encourage him to
> leave his grandmother's house, forcefully escorted the victim to the
> victim's Mustang while keeping the revolver pointed toward his side,
> handcuffed the victim, pointed the gun at the victim while threatening
> several times to kill him if he did not give defendant money, and thereafter
> drove the victim around Detroit for more than an hour while repeatedly
> threatening to kill the victim if he did not produce money....
>
> [T]oward the end of this protracted ordeal,...defendant shot out one of the
> Mustang's windows while getting out of the car, shot the victim's brother in
> the face while the victim watched, got back inside the victim's Mustang,
> and drove away.

People v. Stewart, No. 259358, at p. 2-3 (Mich. Ct. App. Sept. 26, 2006).

### IV.  Analysis

#### A.  Standard of Review

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim–
>
> (1)      resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2)      resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. §2254(d); Harpster v. State of Ohio, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts.  An "unreasonable application" occurs

when the state court identifies the correct legal principle from a Supreme Court's

3

decision but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A federal habeas court may not find a

state adjudication to be "unreasonable" "simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly."  Id. at 411.

### B.  Double Jeopardy Claim

In Petitioner's first claim, he says that his convictions for armed robbery and

assault with intent to rob while armed, arising from the same incident, constitute double

jeopardy.  Respondent contends that Petitioner's rights were not violated because the

convictions arose out of two separate incidents.

The Michigan Court of Appeals in reviewing petitioner's double jeopardy claim

for plain error found no violation, stating:

> There is no violation based on double prosecution if one crime is complete
> before the other takes place, even if the offenses share common elements or
> one constitutes a lesser offense of the other.  People v Swinford, 150 Mich App
> 507, 515; 389 N.W. 2d 462 (1986).
>
> With respect to the assault with intent to rob while armed conviction, the victim
> testified that defendant approached him while holding a revolver, placed the
> revolver to the victim's head to encourage him to leave his grandmother's house,
> forcefully escorted the victim to the victim's Mustang while keeping the revolver
> pointed toward his side, handcuffed the victim, pointed the gun at the victim
> while threatening several times to kill him if he did not give defendant money,
> and thereafter drove the victim around Detroit for more than an hour while
> repeatedly threatening to kill the victim if he did not produce money.  The
> victim's testimony thus establishes that an assault with intent to rob while armed
> occurred as early as the moment that defendant first ordered that the victim turn
> over some money, shortly after defendant initially had placed the victim inside
> the Mustang.  People v Akins, 259 Mich App 545, 554; 675 NW2d 863(2003)
> (listing the elements of assault with intent to rob while armed as (I) committing
> an assault with force and violence, (2) having the specific intent to rob or steal,
> and (3) being armed).  The charged armed robbery took place toward the end of
> this protracted ordeal, when defendant shot out one of the Mustang's windows

while getting out of the car, shot the victim's brother in the face while the victim watched, got back inside the victim's Mustang, and drove away.

Stewart, Slip Op. at p. 2-3.

The Double Jeopardy Clause serves the function of preventing both successive punishments and successive prosecutions.  United States v. Ursery, 518 U.S. 267, 273 (1996).  The protection against multiple punishments prohibits the government from "punishing twice or attempting a second time to punish criminally for the same offense." Witte v. United States, 515 U.S. 389, 396 (1995)(quoting Helvering v. Mitchell, 303 U.S. 391, 399 (1938)).  However, although the Double Jeopardy Clause protects a defendant against cumulative punishments for convictions on the same offense, the clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution.  See Ohio v. Johnson, 467 U.S. 493, 500 (1984).  "It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause."  Albernaz v. United States, 450 U.S. 333, 344, n. 3 (1981).  The prosecution is not precluded from prosecuting both the greater and lesser included offenses in one trial.  See United States v. Schuster, 769 F. 2d 333, 342 (6th Cir. 1985).

When multiple convictions are secured at a single trial, the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is that set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932).  Brown v. Ohio, 432 U.S. 161, 166 (1977).  As the Supreme Court explained that test in Brown:

> "The applicable rule is that where the same act or transaction constitutes
> a violation of two distinct statutory provisions, the test to be applied to

5

determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not····" This test emphasizes the elements of the two crimes.  "If each requires proof of a fact that the other does not, the <u>Blockburger</u> test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes····"

<u>Id</u>. at 166 (quoting <u>Iannelli v. United States</u>, 420 U.S. 770, 785 n. 17 (1975)).

Under Michigan law, the elements of assault with intent to rob while armed are (1) an assault with force and violence; (2) with an intent to rob and steal; and, with (3) the defendant being armed [with a weapon].  <u>See</u> <u>Alexander v. Robinson</u>, 11 Fed. Appx. 456, 459 (6th Cir. 2001).  The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute.  <u>See</u> <u>Lovely v. Jackson</u>, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing M.C.L. 750.529; <u>People v. Allen</u>, 201 Mich. App. 98, 100; 505 N.W. 2d 869 (1993)).  The elements for each offense are different.

Moreover, the facts show that the offenses were part of separate transactions. Petitioner first committed the assault with intent to rob while armed.  The victim testified that he was taken by gunpoint from his grandmother's house, with petitioner demanding that he produce money.  Petitioner shoved the victim into his Mustang and then drove around the City of Detroit for more than an hour.  This is sufficient evidence to establish assault with intent to rob while armed.

The second crime of armed robbery occurred when the victim's brother attempted to rescue the victim, Petitioner brandished a gun, shot the victim's brother in the face, and stole the victim's car.  The Michigan Court of Appeals conclusion that

6

Petitioner's double jeopardy claim lacks merit is a reasonable application of Supreme

Court precedent.  As such, Petitioner is not entitled to habeas relief on this claim.

### C.  Prosecutorial Misconduct/Ineffective Assistance of Counsel Claim

Petitioner's second claim alleges ineffective assistance of counsel and

prosecutorial misconduct.  Petitioner claims that the prosecutor committed misconduct

during her closing argument when she made comments which shifted the burden and

placed the prestige of her office behind her argument.  Petitioner further claims that

counsel was ineffective for failing to object to these remarks.

Petitioner says that the prosecutor shifted the burden of proof when she stated:

> Now, ladies and gentlemen, you've got to ask yourself, why would we be
> here at trial, why would I be standing here in front of you arguing if he's just
> an innocent bystander and I'm supposed to assume that the Detroit Police
> Department has decided to employ Gestapo techniques and take people off
> the street and making [sic] them stand [sic] for a crime that they didn't
> commit? You have to use your common sense.  Daryle Stewart was
> identified by three different people.

(Trial Transcript 7/19/1990 at pp. 56-57).

The Michigan Court of Appeals found that the argument was consistent with the

testimony provided at trial and did not shift the burden of proof, stating:

> Given the context of this remark, which occurred after the prosecutor's
> accurate summary of the trial testimony by the victim and Eric Brown
> identifying defendant as the assailant, and after defendant's trial testimony
> denying his presence during the charged crimes and suggesting that the
> police had arrested him by mistake, we find that the challenged remark
> constituted proper argument, based on trial testimony, that defendant's
> version of events was implausible and unworthy of belief. People v
> Launsburry, 217 Mich App 358, 361; 551 NW2d 460 (1996) (observing that
> a "prosecutor may argue from the facts that a witness, including the
> defendant, is not worthy of belief . . . and is not required to state inferences
> and conclusions in the blandest possible terms"). (footnote omitted).

People v Stewart, Slip Op. at p. 4.

7

On habeas review, the Court's role is to determine whether the prosecutor's conduct was so egregious as to render the entire trial fundamentally unfair.  Serra v. Mich. Dept. of Corrections, 4 F.3d 1348, 1355-56 (6th Cir. 1993).  In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused.  Id.

To prevail on his ineffective assistance of counsel claim, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668 (1984).  Strickland established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof."  Caldwell v. Russell, 181 F.3d 731, 737 (6th Cir. 1999).  However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence.  Id.  Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness'

8

credibility or in a defendant's guilt, must be flagrant and not isolated.  See United States v. Humphrey, 287 F. 3d 422, 433 (6th Cir. 2002).

As to Petitioner's case, the prosecutor's comments, viewed in context, were based on the record evidence and not on her personal belief concerning the evidence. Moreover, even if these isolated incidents could be construed as vouching, they were only a small part of a twenty five page closing argument and rebuttal which summarized the evidence.  Lastly, the jury was instructed that the lawyers' statements and arguments were not evidence.  This instruction by the trial court cured any prejudice that may have arisen from any improper vouching.

Moreover, to the extent that the prosecutor's comments may have been construed as shifting the burden of proof, they did not deprive Petitioner of a fair trial, because any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof.  See Scott v. Elo, 302 F. 3d 598, 603-04 (6th Cir. 2002).  In short, the prosecutor did not commit misconduct.

Because Petitioner has failed to show that he was deprived of a fair trial because of prosecutorial misconduct, Petitioner's claim that counsel was ineffective for failing to object to the prosecutor's comments and remarks also fails.  The Michigan Court of Appeals similar conclusion was a reasonable.

D.  Sentencing Claim

Finally, Petitioner claims that his sentence is disproportionate to the crime and therefore constitutes cruel and unusual punishment.

To the extent that petitioner argues that his sentence is disproportionate under

9

state law, he fails to state a claim for federal habeas relief.  See Austin v. Jackson, 213
F. 3d 298, 300 (6th Cir. 2000).  There is also no federal constitutional right to
individualized sentencing.  See United States v. Thomas, 49 F. 3d 253, 261 (6th Cir.
1995).

Petitioner also is not entitled to relief on any claim that his sentence constitutes
cruel and unusual punishment under the Eighth Amendment.  The United States
Constitution does not require strict proportionality between a crime and its punishment.
See Harmelin v. Michigan, 501 U.S. 957, 965 (1991).  A sentence that falls within the
maximum penalty authorized by statute "generally does not constitute 'cruel and
unusual punishment.'" Austin, 213 F.3d at 302 (internal quotation omitted).  "Federal
courts will not engage in a proportionality analysis except in cases where the penalty
imposed is death or life in prison without possibility of parole."  Thomas, 49 F. 3d at
261.

Petitioner was sentenced to three consecutive terms of 25-50 years for assault
with intent to rob, armed robbery, and assault with the intent to commit murder.  The
guidelines calculated Petitioner's sentence between 84 and 180 months.  The trial
court explained in detail the reasons for departing from the guidelines, including the
circumstances surrounding the crimes and the severity of the crimes, Petitioner's
attitude toward his criminal behavior, i.e. lack of remorse, in the face of identification
testimony from multiple witnesses.  The Michigan Court of Appeals considered the trial
court's reasons and found that the sentence was "proportionate to the seriousness of
the egregious and exceptional circumstances surrounding the offenses and the
offender."  People v. Stewart, Slip Op. at p. 6.  The Court agrees.  Petitioner's sentence

was not disproportionate, the trial court acted within its discretion in imposing

Petitioner's sentence, and there is no extreme disparity between petitioner's crime and

sentence so as to offend the Eighth Amendment.  Petitioner is not entitled to habeas

relief on this claim.

V.  Conclusion

For the reasons stated above, the petition for writ of habeas corpus is DENIED

This case is DISMISSED.

SO ORDERED.


           s/Avern Cohn
Dated:  April 9, 2009        AVERN COHN
          UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Daryle Stewart
210991, Ryan Correctional Facility, 17600 Ryan Road, Detroit, MI 48212  and the
attorneys of record on this date, April 9, 2009, by electronic and/or ordinary mail.

           s/Julie Owens
          Case Manager, (313) 234-5160